## VINCENT J. DOWLING, SR., ET AL. *v.* FINLEY ASSOCIATES, INC., ET AL. (SC 15998)

Callahan, C. J., and Borden, Berdon, Katz and Peters, Js.

Argued February 17—officially released April 6, 1999

*Richard P. Weinstein*, with whom, on the brief, was *Nathan P. Schatz*, for the appellants (plaintiffs).

*R. Bartley Halloran*, with whom, on the brief, was *Steven S. Berizzi*, for the appellees (defendants).

*Opinion*

KATZ, J. The principal issue in this certified appeal is whether a general verdict rendered in a prior action may be relied upon as a basis on which to invoke the doctrine of collateral estoppel in a subsequent action between the same parties. We conclude that a general verdict may not serve as a basis for the doctrine of collateral estoppel. Accordingly, we reverse the judgment of the Appellate Court to the contrary.

This appeal arises out of two separate but related actions between the same parties. Judgments were rendered for the defendants in both actions and the appeals from those judgments were consolidated. The following relevant facts were set forth by the Appellate Court in its opinion. "The first action was based on an investment made by the plaintiffs in a real estate project in downtown Hartford. It was commenced in 1992 when the plaintiffs Vincent J. Dowling, Sr., and Vincent J. Dowling, Jr., filed a five count complaint against the defendants George C. Finley and Finley Associates, Inc. Counts one and two alleged violations of the Connecticut Uniform Securities Act (CUSA), General Statutes (Rev. to 1995) § 36-470 et seq.[1] Count three alleged a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Count four alleged intentional misrepresentation, and count five alleged negligent misrepresentation. The plaintiffs sought monetary damages, rescission and interest.

---

[1] "In 1995, CUSA was transferred from General Statutes §§ 36-470 through 36-502 to General Statutes §§ 36b-1 through 36b-33. For purposes of this opinion, we will refer to the current designation." *Dowling* v. *Finley Associates, Inc.*, 49 Conn. App. 330, 332 n.1, 714 A.2d 694 (1998).

"The defendants filed an answer and raised special defenses based on the applicable statutes of limitation. Count one, which alleged a violation of CUSA and sought the equitable remedy of rescission, was reserved to the court. The plaintiffs withdrew count three, and the remaining counts were tried to a jury, which returned a general verdict for the defendants on January 27, 1995. On the plaintiffs' motion, a mistrial was entered as to count one on January 16, 1996, because a decision had not been rendered within the required 120 day period. See General Statutes § 51-183b.

"The second action, which arose from the same facts as the first, was commenced in 1995, when the plaintiffs filed a two count complaint against the defendants, seeking indemnification of sums paid in a prior settlement.[2] The trial court granted the defendants' request to file a consolidated motion for summary judgment as to count one of the 1992 action and both counts of the 1995 action.

"The trial court granted the motion for summary judgment as to count one of the 1992 action, finding that the plaintiffs failed to bring their cause of action within the maximum five year limitation period established in General Statutes § 36b-29 (f).[3] The court also granted

[2] "The plaintiffs sought and received letters of credit from the predecessor of Fleet Financial Corporation (Fleet) in order to finance their investment with the defendants. When they were unable to pay the accruing interest on the letters of credit, Fleet initiated suit to recover the amount of the letters of credit, interest thereon, costs and attorney's fees. The plaintiffs settled with Fleet." Dowling v. Finley Associates, Inc., 49 Conn. App. 330, 332 n.2, 714 A.2d 694 (1998).

[3] "General Statutes § 36b-29 (f) provides in relevant part: 'No person may bring an action under this section more than two years after the date of the contract of sale or of the contract for investment advisory services, except that (1) with respect to actions arising out of intentional misrepresentation or fraud in the purchase or sale of any interest in any limited partnership not required to be registered under the Securities Act of 1933, no person may bring an action more than one year from the date when the misrepresentation or fraud is discovered, except that no such action may

the motion as to both counts of the 1995 action, concluding that these claims were barred by the doctrine of collateral estoppel." *Dowling* v. *Finley Associates, Inc.,* 49 Conn. App. 330, 331–33, 714 A.2d 694 (1998).

The plaintiffs filed a consolidated appeal to the Appellate Court from the trial court's rendering of summary judgment as to the 1995 action and count one of the 1992 action, claiming that "the trial court improperly (1) determined that count one of the 1992 action was barred by the statute of limitations set forth in § 36b-29 (f) and (2) concluded that the 1995 action was barred by the doctrine of collateral estoppel." Id., 333.

In the first count of the 1992 action, the plaintiffs alleged that the defendants, in violation of CUSA, had held themselves out as financial consultants, sold securities to the plaintiffs without being registered as broker-dealers and concealed the fact that they were receiving a sales commission in connection with the plaintiffs' investment. The Appellate Court concluded that, "[a]lthough the plaintiffs sought equitable relief in count one, they are not exempt from the [five year] time limitations set forth in § 36b-29 (f) because their cause of action was brought pursuant to § 36b-29 (a). Where a party seeks equitable relief pursuant to a cause of action that would also allow that party to seek legal relief, concurrent legal and equitable jurisdiction exists, and the statute of limitations that would be applicable to bar the legal claim also applies to bar the equitable

---

be brought more than five years from the date of such misrepresentation or fraud provided, with respect to an action pending on July 1, 1993, that asserts facts upon which a claim could be asserted under this section on and after July 1, 1993, and which claim is asserted prior to January 1, 1994, no such action may be brought for intentional misrepresentation or fraud that occurred more than five years prior to the date of the filing of the complaint in such action . . . .' " *Dowling* v. *Finley Associates, Inc.,* 49 Conn. App. 330, 333 n.3, 714 A.2d 694 (1998).

claim. . . . [B]ecause the plaintiffs filed their com-
plaint more than five years after the alleged CUSA viola-
tion, the trial court properly determined that count one
of the 1992 action was barred by the statute of limita-
tions set forth in § 36b-29 (f)." (Citations omitted.)
Id., 335.

With regard to their second claim on appeal, the plain-
tiffs first argued that collateral estoppel would not apply
because there would be no final judgment in the 1992
action were the Appellate Court to reverse the judgment
of the trial court as to count one of the 1992 action
and to remand for further proceedings. Because the
Appellate Court declined to reverse the 1992 judgment,
it concluded that the 1992 judgment was final. Id., 336.

The plaintiffs next argued that "collateral estoppel
cannot be applied in cases of general verdicts because
it is not possible to ascertain on which facts the jury
relied." Id., 336–37. The Appellate Court determined
that the doctrine applied to the present case and,
accordingly, affirmed the judgment of the trial court.
Id., 339.

We granted the plaintiff's petition for certification
limited to the following issue: "Did the Appellate Court
properly conclude that, with respect to the plaintiffs'
1995 indemnification action, the prior general verdict
barred the action because of the doctrine of collateral
estoppel?" *Dowling* v. *Finley Associates, Inc.*, 247
Conn. 907, 720 A.2d 513 (1998). This appeal followed.

In this certified appeal, the plaintiffs again argue that
collateral estoppel cannot be applied in cases of general
verdicts because it is not possible to ascertain the facts
on which the jury relied.[4] Before deciding this issue,

[4] In deciding the issue of whether the doctrine of collateral estoppel
applied, the Appellate Court agreed with the plaintiffs that the jury in the
1992 action had rendered a general verdict in favor of the defendants on
all three counts. It does not appear from that court's opinion that the defen-

it is incumbent upon the court to revisit some well established principles of law and their relation to one another.[5]

We begin with the standards governing our review of a trial court's decision to grant a motion for summary judgment. "Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material

dants ever argued that this case did *not* involve the general verdict rule. They do not *expressly* do so now. Rather, the defendants argue that the standard verdict forms given to the jury acted essentially as a "special verdict, or interrogatory," because as to *each* of the three counts the defendants' verdict form asked the jury whether it found the *issues* in favor of each defendant. We note, however, that intertwined with the defendants' assertion is a discussion of the general verdict rule. Specifically, the defendants observe that "[w]hen the interrogatories submitted to a jury are general in nature, this court presumes that the jury found every issue in favor of the prevailing party."

We agree with the Appellate Court's characterization of the verdict in the 1992 action as a general verdict. There is no evidence that the trial court in that action specifically instructed the jury that, by signing the verdict form, it was necessarily finding *both* that the plaintiffs had failed to prove their case on the merits *and* that they had failed timely to bring their action. Rather, to the contrary, at oral argument before this court, the defendants conceded that the jury had been instructed that if it found *either* that the plaintiffs had not proven their case on any count *or* that the defense of the statute of limitations barred the action, it should return a verdict for the defendant, and sign the single defendants' verdict form. Although the jury *could* have decided both matters against the plaintiffs, it did not necessarily do so. Therefore, the verdict was a general verdict. See *Cross* v. *Huttenlocher*, 185 Conn. 390, 400, 440 A.2d 952 (1981) ("[b]ecause the jury rendered a general verdict, we cannot determine whether the case . . . was resolved on the basis of the plaintiff's failure to prove [their] case or the defendant[s'] successful assertion of [the statute of limitations defenses]").

[5] The plaintiffs also argue that policy reasons exist as well for the rejection of the doctrine of collateral estoppel in the present case. Specifically, the plaintiffs assert that, because they sought to amend the complaint in the 1992 action to add the indemnification claims that later became the subject of the present case, and because the defendants successfully opposed the amendment on the theory that it was premature, to apply the doctrine of collateral estoppel now would work an injustice. Because we agree with the plaintiffs' primary claim, we do not address this ancillary argument.

fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381 [now § 17-46]. . . . *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994)." (Internal quotation marks omitted.) *Doty* v. *Mucci*, 238 Conn. 800, 805–806, 679 A.2d 945 (1996).

In the 1992 action, the trial court submitted three counts to the jury, each alleging (1) that the defendants had violated the plaintiffs' legal rights by receiving commissions from the sale of securities despite the fact that they were unlicensed and (2) that the defendants had caused damages to the plaintiffs as a result. The defendants denied the plaintiffs' claims of liability and damages and pleaded special defenses to each count on the basis of the applicable statute of limitations.[6]

---

[6] Specifically, the defendants asserted the following special defenses: "First Special Defense

"1. To the extent that the Connecticut Uniform Securities Act may apply to any activity or conduct of the defendant[s] as alleged by the plaintiffs, all of the plaintiffs' claims are barred by Connecticut General Statutes [§] 36-498 (f).

"Second Special Defense

"1. To the extent that the Connecticut Unfair Trade Practices Act may apply to any activity or conduct of the defendant[s] as alleged by the plaintiffs, all of the plaintiffs' claims are barred by Connecticut General Statutes [§] 42-110g (f).

"Third Special Defense

The jury rendered a general verdict in favor of the defendants on all three counts. We, therefore, turn next to our law on the general verdict rule.

"Under the general verdict rule, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . . The rule rests on the policy of the conservation of judicial resources, at both the appellate and trial levels." (Citations omitted; internal quotation marks omitted.) *Gajewski* v. *Pavelo*, 229 Conn. 829, 836, 643 A.2d 1276 (1994).

"On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. See, e.g., *McLaughlin* v. *Bronson*, 206 Conn. 267, 277–78, 537 A.2d 1004 (1988).

"In the trial court, the rule relieves the judicial system from the necessity of affording a second trial if the result of the first trial potentially did not depend upon the trial errors claimed by the appellant. Thus, unless an appellant can provide a record to indicate that the result the appellant wishes to reverse derives from the

"1. *The plaintiffs' causes of action are barred by Connecticut General* Statutes [§] 52-577."

trial errors claimed, rather than from the other, independent issues at trial, there is no reason to spend the judicial resources to provide a second trial." *Curry* v. *Burns*, 225 Conn. 782, 790, 626 A.2d 719 (1993).

Therefore, the general verdict rule is a rule of appellate jurisprudence designed to further the general principle that "it is the appellant's responsibility to provide a record upon which reversible error may be predicated." Id. "A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury." (Internal quotation marks omitted.) Id., 786.

This court has held that the general verdict rule applies to the following five situations: "(1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." Id., 801. Because the 1992 action falls under the fourth situation, the general verdict rule would have been applicable to the plaintiffs' appeal from that judgment to "prevent an appellate court from disturbing a verdict that may have been reached under a cloud of error, but is nonetheless valid because the jury may have taken an untainted route in reaching its verdict." *Sady* v. *Liberty Mutual Ins. Co.*, 29 Conn. App. 552, 558, 616 A.2d 819 (1992).

Finally, we turn to the last area of the common law pertinent to this case. We have had numerous opportunities recently to address the two doctrines of collateral estoppel and res judicata, their similarities and their differences. See, e.g., *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 811–12, 695 A.2d 1010 (1997); *Delahunty* v.

*Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 589, 674 A.2d 1290 (1996); *Carol Management Corp.* v. *Board of Tax Review*, 228 Conn. 23, 32–33, 633 A.2d 1368 (1993); *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 712–13, 627 A.2d 374 (1993), and cases cited therein. "Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988), quoting *Gionfriddo* v. *Gartenhaus Cafe*, 15 Conn. App. 392, 401–402, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989)." (Internal quotation marks omitted.) *Crochiere* v. *Board of Education*, 227 Conn. 333, 343, 630 A.2d 1027 (1993).

Both doctrines " 'protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation' "; *Virgo* v. *Lyons*, supra, 209 Conn. 501; and "express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." *State* v. *Ellis*, 197 Conn. 436, 465, 497 A.2d 974 (1985), on appeal after remand sub nom. *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990).

"Res judicata, or claim preclusion, is [however] distinguishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim. *Slattery* v. *Maykut*, 176 Conn. 147, 156–57, 405 A.2d 76 (1978). In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the

same parties or those in privity with them upon a different claim. *DeLaurentis* v. *New Haven*, 220 Conn. 225, 239, 597 A.2d 807 (1991)." *Weiss* v. *Statewide Grievance Committee*, 227 Conn. 802, 818, 633 A.2d 282 (1993).

"An issue is '*actually litigated*' if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. 1 Restatement (Second), [supra, comment (h)]." (Emphasis in original.) *Jackson* v. *R. G. Whipple, Inc.*, supra, 225 Conn. 714–15.

"To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 600–601. For the reasons that follow, we conclude that the doctrine of collateral estoppel is inapplicable to the present case and that, consequently, the Appellate Court improperly affirmed the judgment of the trial court.

We begin with the general verdict in the 1992 action. This verdict signifies *either* that the plaintiffs had failed to prove that the defendants had engaged in the alleged improper conduct *or* that, notwithstanding sufficient

proof of liability or damages, the jury found that recovery was barred by the applicable statute of limitations,[7] *or both.* This verdict left open to speculation the precise issues on which the jury may have rested its decision. "Because the jury rendered a general verdict, we cannot determine whether the case . . . was resolved on the basis of the plaintiff's failure to prove [their] case or the defendant[s'] successful assertion of [the statute of limitations defenses]." *Cross* v. *Huttenlocher,* 185 Conn. 390, 400, 440 A.2d 952 (1981); see also *Lambert* v. *Stovell,* 205 Conn. 1, 7 n.4, 529 A.2d 710 (1987) (general denial of complaint and statute of limitations defense causes general verdict for defendant to be reasonably rendered on one or more distinct grounds); *Fabrizio* v. *Glaser,* 38 Conn. App. 458, 465–66, 661 A.2d 126 (1995), aff'd, 237 Conn. 25, 675 A.2d 844 (1996) (same).

We recognize the presumption behind the general verdict rule that the jury decided "every issue in favor

---

[7] We note that the statute of limitations pertinent to the causes of action in the 1992 cause action; see footnote 3 of this opinion; do not govern the present indemnification action. See General Statutes § 52-598a. Although the present indemnification action is premised on a violation of certain legal duties, which formed the foundation for the 1992 action, the claim is separate and distinct. This action asserts that the defendants' wrongful conduct caused the plaintiffs to incur liability and suffer monetary loss in another action in the nature of a settlement payment. The plaintiffs therefore seek indemnification for the amounts they were required to pay to the third party in that other action. Following *Protter* v. *Brown Thompson & Co.,* 25 Conn. App. 360, 365, 593 A.2d 524, cert. granted, 220 Conn. 910, 597 A.2d 335 (1991) (appeal withdrawn), in which the Appellate Court held that the underlying statute of limitations was the proper measure applicable to an indemnification action, the legislature enacted § 52-598a, which allows an action for indemnification to be brought "within three years from the date of the determination of the action against the party which is seeking indemnification by either judgment or settlement." See *Republic Ins. Co.* v. *Pat DiNardo Auto Sales, Inc.,* 44 Conn. Sup. 207, 211, 678 A.2d 516 (1995), aff'd, 41 Conn. App. 686, 677 A.2d 21, cert. denied, 239 Conn. 906, 682 A.2d 1005 (1996). Therefore, it is the three year limitation period set forth in § 52-598a that controls, and not any limitation period on which the jury verdict and final judgment against the plaintiffs in the 1992 action may have rested.

of the prevailing party." (Internal quotation marks omitted.) *Curry* v. *Burns*, supra, 225 Conn. 786. That rule operates, however, to insulate a verdict that may have been reached under a cloud of error, but which also could have been reached by an untainted route. In light of the theory behind the rule that "it is the appellant's responsibility to provide a record upon which reversible error may be predicated"; id., 790; this presumption makes sense only in the context of appellate review of a claim of trial court error.[8]

Indeed, the presumption behind the general verdict rule that we noted in *Curry* arises from an ambiguity in the record as to the precise basis of the jury's verdict that, by itself, defeats the doctrine of collateral estoppel in this case. As we have stated, in order for the doctrine of collateral estoppel to apply, the issue of ultimate fact for which preclusion is sought must have been "actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." *Weiss* v. *Statewide Grievance Committee*, supra, 227 Conn. 818. Because a verdict to which the general verdict rule applies is necessarily one that can rest on different grounds, there is no way to know definitively that the verdict satisfied the criteria

---

[8] The defendants argue that it was incumbent upon the plaintiffs to ask for interrogatories, to object to the verdict form, or, finally, to object to the acceptance of the verdict and that their failure to take any of these measures "conclusively foreclos[ed] any possible objection to the jury verdict form." These requirements are indeed still very much alive for certain claims on appeal. See, e.g., *West Haven Sound Development Corp.* v. *West Haven*, 207 Conn. 308, 315–17, 541 A.2d 858 (1988). It certainly would have been obligatory had they wanted to appeal from the judgment in that action and be relieved of the burdens of the general verdict rule. While indeed, in the absence of any such action by the plaintiffs, the general verdict rule, as a rule of appellate jurisprudence, would have acted as the defendants' shield, there is nothing in our jurisprudence that allows the defendants to use the rule as a sword. Therefore, the plaintiffs' failure to take the measures enumerated by the defendants plays no role in this case, wherein the verdict form and the general verdict rules are not under attack.

required to invoke the collateral estoppel doctrine. Specifically, in the present case, the very lack of specificity in the jury's verdict in the 1992 action, coupled with the jury instructions; see footnote 4 of this opinion; prohibits the doctrine's application to the 1995 case because it cannot be determined that the jury necessarily made an ultimate finding of fact in the defendants' favor on the applicable claim of liability.

"For estoppel to apply, the fact sought to be foreclosed by [the] defendant must necessarily have been determined in his favor in the prior trial; it is not enough that the fact may have been determined in the former trial. . . . The defendant has the burden of showing that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." (Citation omitted; internal quotation marks omitted.) *State* v. *Aparo*, 223 Conn. 384, 406, 614 A.2d 401 (1992), cert. denied, 507 U.S. 972, 113 S. Ct. 1414, 1415, 122 L. Ed. 2d 785 (1993). "Where there is more than one possible reason for the jury's verdict, and the court . . . cannot say that any one is necessarily inherent in the verdict, the doctrine of collateral estoppel is inapplicable . . . ." (Internal quotation marks omitted.) *United States* v. *Irvin*, 787 F.2d 1506, 1515–16 (11th Cir. 1986).

Our view that a general verdict is not entitled to collateral estoppel effect where, as here, there is no way to ascertain the precise basis of the jury's determination in a prior adjudication, is consistent with the opinions expressed by other courts. See *S.E.L. Maduro (Florida), Inc.* v. *M/V Antonio de Gastaneta*, 833 F.2d 1477, 1483 (11th Cir. 1987) ("[i]f the jury could have premised its verdict on one or more of several issues, then collateral estoppel does not act as a bar to future litigation of the issues"); *Case Prestressing Corp.* v. *Chicago College of Osteopathic Medicine*, 118 Ill. App. 3d 782, 785–86, 455 N.E.2d 811 (1983) ("where, as here, issues of both liability and damages are sent to the jury

and the jury simply returns a general verdict [against the plaintiff], estoppel will not be applied since it is not certain whether the jury found against [the] plaintiff on liability or on damages or both"); see also *Chew* v. *Gates*, 27 F.3d 1432, 1438 (9th Cir. 1994), cert. denied, 513 U.S. 1148, 115 S. Ct. 1097, 130 L. Ed. 2d 1065 (1995); *Owens* v. *Treder*, 873 F.2d 604, 610 (2d Cir. 1989); *C.B. Marchant Co.* v. *Eastern Foods, Inc.*, 756 F.2d 317, 319 (4th Cir. 1985); *Glass* v. *United States Rubber Co.*, 382 F.2d 378, 384 (10th Cir. 1967); *Heywood* v. *Samaritan Health System*, 902 F. Sup. 1076, 1083 (D. Ariz. 1995); *Angstrohm Precision, Inc.* v. *Vishay Intertechnology, Inc.*, 567 F. Sup. 537, 541 (E.D.N.Y. 1982); *Rutherford* v. *State*, 188 Cal. App. 3d 1267, 1285, 233 Cal. Rptr. 781 (1987).

The view we express in this opinion has been embraced as well in the comments to § 27 of the Restatement (Second) of Judgments. Specifically, comment (g) addresses the doctrine's application when there has been a prior adjudication involving several issues. "If several issues are litigated in an action, and in a subsequent action between the parties, one of the parties relies on the judgment as conclusive of one of the issues, that party must show that the issue was determined by the judgment in the prior action." 1 Restatement (Second), supra, § 27, comment (g), p. 257. Comment (i) precludes collateral estoppel effect when the prior adjudication is based on alternative determinations. "If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." Id., comment (i), p. 259.

As the moving party seeking summary judgment, it was incumbent upon the defendants to show that the judgment against the plaintiffs in the 1992 action could not have been rendered without deciding the issues

upon which the 1995 action was predicated. Because of the general verdict in the earlier action, however, the defendants could not demonstrate whether the jury had found against the plaintiffs as to liability or based upon the statute of limitations defense or, indeed, on both grounds. Therefore, the court improperly concluded that the verdict in favor of the defendants in the first action barred the litigation of the issues raised in the present action. Consequently, material issues of fact remain that cannot be resolved by summary judgment. *Griffin* v. *Parker*, 219 Conn. 363, 371, 593 A.2d 124 (1991).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for further proceedings according to law.

In this opinion the other justices concurred.